UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                    :

ALKIM BILLIPS,                                :

                  Plaintiff,            :

      -v-                                    :            **OPINION AND ORDER**

NYC DOCS et al., CITY OF NEW YORK,   :            18 Civ. 1719 (ER)
and JOHN DOE CORRECTION OFFICER,  :

                  Defendants.         :

-----------------------------------------------------------X

EDGARDO RAMOS, United States District Judge:

      *Pro se* Plaintiff Alkim Billips ("Billips" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 1983, alleging that while he was detained at Manhattan Detention Complex ("MDC"), a correction officer forced him to live with rival gang members and publicly announced Billips' gang affiliation to them. On March 2, 2018, this Court dismissed the claims against the New York City Department of Correction ("NYC DOC") and added the City of New York ("the City") and "John Doe Correction Officer" ("John Doe") as defendants.[1] March 2, 2018 Order 2-3, Doc. 6. On October 12, 2018, the City moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and failure to identify the correction officer. Doc. 23. For the reasons set forth below, the City's motion is GRANTED.

---

[1] Because the John Doe Defendant has not been identified or served, he does not join in this motion. For simplicity, this opinion and order refers to the City of New York as "the Defendant."

## BACKGROUND

The Court accepts the following allegations as true for purposes of this motion.[2] On January 17, 2018, Billips was a pretrial detainee at the MDC. Compl. 4, Doc. 2. Billips was assigned a Security Risk Group ("SRG") classification because of his membership in the Crips gang. *Id*. Billips alleges that he was purposefully assigned to live in a housing area that houses members of the rival Bloods gang. *Id*. Billips further alleges that during an angry tirade, an unnamed correction officer publicly informed the residents in that housing area that Billips was a Crip. As a result, Bloods gang members questioned him daily and assaulted him on one occasion. *Id*. Billips suffered pain to his face, temple, neck, and back as a result of the assault. *Id*. at 5.

## PROCEDURAL HISTORY

Billips filed the instant action against NYC DOC on February 23, 2018. Compl. 1, Doc. 1. This Court dismissed Billips' claims against NYC DOC because city agencies or departments do not have the capacity to be sued under New York law. March 2, 2018 Order 4, Doc. 6. Instead, the Court construed the Defendants to be the City and John Doe, pursuant to Fed. R. Civ. P. 21. *Id*. In the February 23, 2018 complaint, Billips described John Doe as an "officer (I'll find his name)" who launched an angry tirade at Billips during which he informed the Bloods gang housing unit that Billips was a Crip. Compl. 4, Doc 1. This Court issued a *Valentin* Order requiring the City to identify the John Doe officer. *Id*. at 3. On June 28, 2018, this Court

---

[2] Some of these allegations appear in filings other than the complaint; specifically, this opinion relies on allegations in the original complaint and Billips' opposition to the motion to dismiss. "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted) (collecting district court cases); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

granted the City's letter motion to compel Billips to respond to their identification interrogatories and granted the City more time to respond to the *Valentin* Order. June 28, 2018 Order 2, Doc 16. During discovery, Billips only provided "vague details" and "did not provide a date or even a time frame for when the alleged incident occurred, despite defendant City's request for this information." Def.'s August 30, 2018 Letter 2, Doc. 21. Billips responded to the City's identification interrogatories by stating that John Doe "was an Asian male 'on 3 to 11 shift, 6E 125 White Street.'" *Id*.

On August 30, 2018, the City informed the Court that they were unable to identify the correction officer despite "a diligent investigation" and requested a briefing schedule to file a motion to dismiss. Def.'s August 30, 2018 Letter, Doc. 21. Specifically, the City was "unable to ascertain the full name and/or shield number of the individual identified in Billips' complaint as 'John Doe Correction Officer.'" *Id*. The City filed a motion to dismiss the complaint on October 12, 2018, arguing that: (1) Billips failed to state a claim for municipal liability against the City of New York, and (2) Billips' claims against the "John Doe Correction Officer" should be dismissed because the parties are unable to determine the identity of this officer. Doc. 23. Billips filed an opposition to the City's motion on November 20, 2018 and asserted a failure to train theory; the City replied via letter on November 27, 2018. Docs. 26, 27.

## DISCUSSION

### I. Standard of Review

When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Fed. R. Civ. Pro. 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When "the complaint [is] filed *pro se*, it must be construed liberally "to raise the strongest arguments [it] suggest[s]." *Walker*, 717 F.3d at 124. The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

## II. Failure to Identify John Doe Correction Officer

Billips' claim against John Doe must be dismissed because he failed to identify him. The New York Civil Practice Law and Rules require that plaintiffs making claims against John Doe defendants meet two requirements: (1) the "party must exercise due diligence…to identify the defendant by name," and (2) "describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (quoting several New York cases); *see also* N.Y. C.P.L.R. 1024 (McKinney). Generally, a complaint "must provide the defendant with 'fair notice of what plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346 (2005) (quoting

4

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). But a plaintiff "'who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party,' may proceed against that party by designating a fictitious name (a "John Doe") until they become aware of that party's identity." *Barrett v. City of Newburgh*, 720 F. App'x 29, 32 (2d Cir. 2017) (citing N.Y. C.P.L.R. 1024 (McKinney)).

Courts generally give *pro se* plaintiffs a reasonable "opportunity for discovery to learn the identities of responsible officials." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998). The general principal that a "tort victim who cannot identify the tortfeasor cannot bring suit," is "relaxed" for *pro se* litigants and trial courts are encouraged "to assist a *pro se* plaintiff in identifying a defendant." *Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997). However, dismissal of a complaint may still be warranted when a plaintiff "fail[s] to identify the individuals—even as "John Doe" Defendants—who were responsible for the alleged deprivation.*" Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 492 (S.D.N.Y. 2014). When a party has had a "full opportunity to conduct discovery, [and] plaintiff has not yet identified and served [John Doe] defendants," the claims against John Doe defendants may be dismissed without prejudice. *Watkins v. Doe*, No. 04 CIV. 0138 (PKC), 2006 WL 648022, at *3 (S.D.N.Y. Mar. 14, 2006).

During discovery, Billips only provided "vague details"— that John Doe "was an Asian male 'on 3 to 11 shift, 6E 125 White Street— and "did not provide a date or even a time frame for when the alleged incident occurred, despite defendant City's request for this information." Def.'s August 30, 2018 Letter 2, Doc. 21. Plaintiffs need to describe "with particularity the date, time, and location of the alleged…incident." *Hogan*, 738 F.3d at 519. The City was unable to identify the correction officer and apprise him that he is a defendant in this action, based on the

5

information Billips provided. Accordingly, the claims against John Doe are dismissed without prejudice.

## III. Failure to State a Claim Under § 1983

Billips has not pled sufficient facts to make a § 1983 claim against the City. To hold a municipality liable within the meaning of § 1983, a plaintiff must establish that a policy or custom of the municipality itself caused the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). A plaintiff must also establish a causal link between the municipality's policy or custom and plaintiff's constitutional deprivation of rights. A City "cannot be liable under *Monell* where plaintiff cannot establish a violation of his constitutional rights." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Plaintiff needs to provide evidence of a "*deliberate* action attributable to the municipality itself [as] the 'moving force' behind plaintiff's deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 400, 404 (1997) (emphasis in original) (quoting *Monell*, 436 U.S. at 694). Although Billips establishes the possibility that the City violated his constitutional right to reasonable safety while in detention, he has not provided facts that link the City's alleged failure to train the correction officer to the cause of the constitutional deprivation.

### A. Constitutional Rights of Pretrial Detainees

Construing his complaint liberally, Billips, a pretrial detainee, has alleged a cause of action under the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment because the correction officer deliberately placed

6

him at risk of serious harm. Pretrial detainees are "persons who have been charged with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). A pretrial detainee has a liberty interest in avoiding conditions of pretrial detention that amount to punishment. *Bell*, 441 U.S. at 535 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). "Pretrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003)), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, governmental due process obligations for pretrial detainees are "at least as great" as the Eighth Amendment protections of a convicted prisoner. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

Additionally, the government has a constitutional duty to ensure the reasonable safety of detainees. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). One of the duties the Eighth Amendment imposes on prison officials is to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

7

The fatal rivalry between Crips and Bloods is notorious and Billips was classified as being a member of the Crips, information that a correction officer would be aware of. That the correction officer publicly announced Billips' SRG classification during an "angry" tirade directed at Billips, and after placing him in a housing unit for Bloods gang members, weighs in favor of finding that the officer knowingly placed Billips at risk. After the alleged tirade, Bloods gang members questioned Billips daily and assaulted him on one occasion, causing him physical injury. Therefore, the correction officer's actions arguably evince deliberate indifference to the risks of having housed Billips with rival gang members.

### B. Municipal Liability for Failure to Train or Supervise

Ultimately, Billips' § 1983 claim fails because he does not assert a causal link between his failure to train theory and his constitutional deprivation. Inadequate employee training "may serve as the basis for § 1983 liability…where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[F]or liability to attach…the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391. Furthermore,

> It is impossible to prevail on a claim that the [City's] training program was inadequate without any evidence as to whether the [City] trained its officers…, how the training was conducted, how better or different training could have prevented the challenged conduct, or how "a hypothetically well-trained officer would have acted under the circumstances."

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 131 (2d Cir. 2004). Additionally, a failure to train theory requires evidence of a pattern of similar incidents in which citizens were injured or endangered. *Canton*, 489 U.S. at 397-98.

8

A failure to supervise theory requires that plaintiff show there is history of wide-spread abuse. *Id*. at 398. In *Walker v. City of New York*, the Second Circuit articulated three requirements that plaintiffs need to meet to show that a municipality's failure to train or supervise constitutes a deliberate indifference to their constitutional rights: (1) the policymakers foresaw the situation, (2) the situation would present the employee with a difficult choice that training or supervision would make less difficult, or there is a history of employees mishandling the situation, and (3) the wrong choice by the city employee will frequently cause the constitutional deprivation. 974 F.2d 293, 297 (2d Cir. 1992).

Here, Billips claims that the municipality did not meet its supervisory obligations and that "MDC staff [is] not properly trained." Pl.'s Rebuttal 8, 13, Doc. 26. However, he has not provided facts that show the City's training programs are lacking or how a training deficiency caused the correction officer to place him in the wrong housing unit. Billips' failure to train theory is based solely on his allegation that labeling a pretrial detainee a gang member and placing him in a housing unit designated for a rival gang could not constitute proper training and proper supervision. *Id*. at 6. This allegation does not establish a causal link between Billip's constitutional deprivation and the City's training programs. Additionally, Billips does not name a supervisor who can be held responsible nor a widespread history of abuse to support his failure-to-supervise theory. Even if we construe Billips' complaint liberally, the Second Circuit called it a "fatal weakness" when a municipal liability allegation under § 1983 "fail[ed] to prove any official policy" authorizing the unlawful action against the claimant. *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980). Accordingly, Billips has failed to show that the correction officer was improperly trained or supervised and that this caused John Doe to place Billips in the wrong housing unit and publicly announce his SRG classification.

## CONCLUSION

In summary, the City's motion to dismiss the complaint is GRANTED. The Court certifies, pursuant to 28 USC § 1915(a)(3), that any appeal from this Order should be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Billips is granted leave to replead his § 1983 claim in an Amended Complaint. If Plaintiff chooses to file an Amended Complaint, he must do so by **July 9, 2019**. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 23. Furthermore, the Clerk is respectfully directed to send a copy of this order to the Plaintiff, addressed to Alkim Billips (34917118720), 125 White Street, New York, NY 10007.

SO ORDERED.

Dated: May 7, 2019
New York, New York

EDGARDO RAMOS
United States District Judge